# In the United States Court of Federal Claims

No. 15-421L

(E-Filed June 23, 2017)

|  |  |  |
|---|---|---|
| DAVID H. & ARLINE M. BEHRENS, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Motion for Summary Judgment; RCFC 56; Rails-to-Trails; Trails Act; Fifth Amendment Takings; Railbanking |
| v. | ) ) | |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

Thomas S. Stewart, Kansas City, MO, for plaintiffs.

Edward C. Thomas, Trial Attorney, with whom were John C. Cruden, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.  Evelyn Kitay, Associate General Counsel, United States Surface Transportation Board, Washington, DC, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge

Plaintiffs are landowners along a 144.3-mile rail corridor owned by the Missouri Central Railroad Company (MCRR).  See ECF No. 24 at 4 (fourth amended complaint).  The rail corridor stretches through the center of Missouri, from Pettis County to Franklin County.  See id.  Plaintiffs claim they have suffered a Fifth Amendment taking of their property interests as a result of MCRR's efforts to discontinue use of the rail corridor, and allow use of the property as a recreational trail.  See id. at 20.  This is one of four lawsuits brought by plaintiffs in this court alleging a takings claim along this same rail corridor.  See Abbott, et al. v. United States, Case No. 15-211; Burnett, et al. v. United States, Case No. 16-995; and Axmark, et al. v. United States, Case No. 16-1138.

Before the court are the parties' cross-motions for summary judgment, pursuant to Rule 56 of the Rules for the United States Court of Federal Claims (RCFC).  See ECF

Nos. 34 and 36.  For the reasons set forth below, plaintiffs' motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

I.   Background

In 1983, Congress enacted the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 42, to the National Trails System Act, Pub. L. No. 90-543, 82 Stat. 919 (1968) (codified as amended at 16 U.S.C. § 1241 et seq.) (2012) (the Trails Act).  The Trails Act provides railroads an alternative to abandoning their use of a rail line by preserving the rail corridor for future rail use, a practice known as "railbanking." See 16 U.S.C. § 1247(d) (2012); Preseault v. I.C.C. (Preseault I), 494 U.S. 1, 6-7 (1990). A railbanked corridor can be used for other public purposes in the interim, such as a public trail.  Preseault I, 494 U.S. at 6-7.

Once an abandonment application or request for an exemption is filed with the Surface Transportation Board (STB), a party interested in interim trail use of the railroad corridor may request the issuance of a certificate of interim trail use (CITU)—for an abandonment application proceeding—or a notice of interim trail use (NITU)—for an abandonment exemption proceeding.  See 49 C.F.R. § 1152.29(c)-(d).  If the railroad indicates that it is willing to negotiate a railbanking and interim trail use agreement, the STB issues a NITU.  See Preseault I, 494 U.S. at 7 n.5.

Upon the issuance of a NITU, the railroad's initial abandonment proceedings are suspended and a 180-day period begins for the rail operator and third party to negotiate a railbanking and interim trail use agreement.  See id.  If an agreement is reached, the abandonment proceedings are suspended and rail service is discontinued.  See id.  Under the terms of the Trails Act, interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d) (2012); see also 49 C.F.R. § 1152.29 (implementing regulations).  If no agreement is reached, the rail operator may continue to pursue abandonment proceedings. See 49 C.F.R. § 1152.29(d)(1).

The Fifth Amendment states that private property is not to "be taken for public use, without just compensation." U.S. CONST. amend. V.  Here, plaintiffs claim they have suffered a Fifth Amendment taking of their property interests as result of the NITU issued by the STB after MCRR sought permission to abandon the rail corridor at issue. See ECF No. 24 at 19-20.  The expiration date of the NITU at issue is February 21, 2018. See Missouri Central Railroad Co.—Abandonment Exemption—In Cass, Pettis, Benton, Morgan, Miller, Cole, Osage, Maries, Gasconade, and Franklin Counties, MO., STB Docket No. AB-1068 (Sub-NO. 3X), Dec. ID No. 45595 (served Dec. 23, 2016).  To date, MCRR has not entered into a railbanking and interim trail use agreement, and continues to hold all of its property rights in the subject rail corridor by either fee title or easement.  See ECF No. 36 at 21.

Plaintiffs now seek summary judgment on liability for claims related to 71 parcels of land.[1]  Plaintiffs argue that they are entitled to such judgment for three reasons:

(1)    Plaintiffs owned fee simple title to the property adjacent to the railroad corridor;

(2)    The railroad originally acquired mere easements, pursuant to Missouri law, by and through nine condemnations, adverse possession, and 33 deeds; and

(3)    The railroad's easement was limited to railroad purposes, and the conversion of the easement for a public recreational trail is beyond the scope of the easement, and thus constituted a taking that requires just compensation.

See ECF No. 34 at 3-4.

In opposition, and by way of cross-motion for summary judgment, defendant asserts that many of plaintiffs' claims are improper because either:  (1) plaintiffs do not have a valid property interest in the segments of the rail corridor allegedly adjacent to their land, or (2) the deeds relating to certain parcels convey easements broad enough to permit interim trail use.  See ECF No. 36 at 1.  Defendant also argues that it is premature to determine whether defendant's actions effected a permanent or a temporary taking because the railroad company has not entered into a trail use agreement or consummated abandonment.  See id. at 2.

Briefing is complete on the parties' motions for summary judgment. Oral argument was not requested by the parties and was not deemed necessary by the court. The matter is now ripe for a ruling.

II.    Legal Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[1]    Plaintiffs initially alleged 74 claims, three of which have since been voluntarily dismissed (claims 13B, 27, and 39A).  See ECF No. 30.

3

242, 248 (1986). An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. The burden then shifts to the nonmoving party to show that a genuine issue of material fact does exist such that the case should proceed to trial. Id. at 324.

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). The court, however, must not weigh the evidence or make findings of fact. See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment.").

Because the parties have developed an extensive factual record through discovery, the issues presently before the court are primarily legal in nature. Thus, summary judgment is appropriate, and to the extent any factual disagreements remain, the court finds them to be immaterial to the issues at hand.

III.   Analysis

To prevail on a Fifth Amendment takings claim arising from the issuance of a NITU, a plaintiff must prove that the conversion of a railroad right-of-way to trail use effectively eliminates any state law reversionary property interest that plaintiff would have otherwise had. See Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing Preseault v. United States (Preseault II), 100 F.3d 1525, 1543 (Fed. Cir. 1996) (en banc)). The Federal Circuit has set forth a framework for analyzing takings claims under the Trails Act which begins with establishing whether an ownership interest exists in the segment of the rail corridor. See Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009). The court applies state law when evaluating the nature of the property interest at issue. See Preseault I, 494 U.S. at 8, 16.

If a railroad owns the subject property in fee, the United States is not liable for a taking. Preseault II, 100 F.3d at 1533. When the land at issue is subject to a railroad easement, a plaintiff may establish the right to just compensation in one of two ways. First, a plaintiff can show that the proposed trail use falls outside the scope of the

4

easement.  See Ellamae Phillips, 564 F.3d at 1373.  See also Romanoff Equities, Inc. v. United States, 815 F.3d 809, 812-13 (Fed. Cir. 2016), cert. denied, 137 S. Ct. 597 (2016) (noting that if the trail use falls within the scope of the easement at issue, the United States has no takings liability).  Alternatively, plaintiffs can show that their property rights had already reverted because the railroad easement was abandoned before the STB issued its NITU.  See Ellamae Phillips, 564 F.3d at 1373.

     A.     Missouri law does not support a presumption that easements conveyed to a railroad by voluntary grant are limited in scope to railroad purposes only

As a preliminary matter, the court addresses an argument that runs throughout plaintiffs' briefing.  Much of plaintiffs' theory of defendant's liability is premised on their position that any conveyance of an easement to a railroad made by voluntary grant, as opposed to a forced conveyance through condemnation proceedings, is statutorily limited in scope to railroad purposes only.  See ECF No. 37 at 21 ("[I]f the original source conveyance deed was a voluntary grant under Missouri's statutory scheme then the scope of it is limited to railroad purposes by statute.").  The court does not find that such a presumption exists.

The Missouri statute in question reads:

> Every corporation formed under this [Railroads] chapter shall, in addition to the powers herein conferred, have power. . . (2) To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only.

Mo. Rev. Stat. § 388.210(2).  Plaintiffs argue that the only correct interpretation of the term "for the purpose of such grant only" must be that the scope of any easement made by voluntary grant to a railroad is limited, in all cases, to "railroad purposes only."  See ECF No. 35 at 19-25.  By this interpretation, plaintiffs assert that trail use necessarily falls outside of the scope of any voluntary grant.  See id. at 25 (arguing that "all of the deeds at issue in this case, which are voluntary grants to the railroad, are not only easements to the railroad they are also limited to railroad purposes as a matter of law").

While the court understands the logic of plaintiffs' position, it hesitates to apply this interpretation for several reasons.  First, the effect of such an interpretation would be to prevent a property owner from conveying its land, outright, with no conditions or reversionary interests, to a railroad.  In the court's view, the statutory language does not unambiguously encompass all voluntary conveyances.  And absent a clear indication that Missouri lawmakers intended such a result, the court will not impose this significant limitation on a property owner's right to transfer its property.  See Hinshaw v. M-C-M

Properties, LLC, 450 S.W.3d 823, 827 (Mo. Ct. App. 2014) ("The cardinal rule regarding an interpretation of a deed is to ascertain the intention of the parties and to give that intention effect.") (citing Dean Machinery Co. v. Union Bank, 106 S.W.3d 510, 520 (Mo. App. 2003).

Furthermore, the cases on which plaintiffs rely do not provide support for this inference. See ECF No. 35 at 14-19. In both Brown v. Weare, 152 S.W.2d 649 (Mo. 1941), and Moore v. Missouri Friends of The Wabash Trace Nature Trail, Inc. (Moore v. Missouri Friends), 991 S.W.2d 681 (Mo. App. 1999), the court expressly considered the limiting language of the conveying deeds in determining the scope of the easements and upon determining the grants were voluntary did not presume, as plaintiffs suggest, that the scope of the easements was limited only to railroad purposes. Brown, 152 S.W.2d at 652-54 (deed expressly conveyed a "right of way for said Railroad" and made another grant only "so long as the same shall be used for the construction, use and occupation of said railroad company"); Moore, 991 S.W.2d at 687 (deed included language "for Rail Road purposes"). And the court's decision in Boyles v. Missouri Friends of the Wabash Trace Nature Trail, Inc., 981 S.W.2d 644 (Mo. App. 1998), provides even less support for plaintiffs' proposed interpretation because it did not involve voluntary grants, but rather involuntary grants by condemnation. See id at 648-50.

The court, therefore, declines to apply the presumption suggested by plaintiffs, and instead looks to the express language of each deed at issue to determine what, if any, limitations exist. Hubbert, et al. v. United States, 58 Fed. Cl. 613, 615-16 (2003); Schuermann Enter., Inc. v. St. Louis Cty., 436 S.W.2d 666, 669 (Mo. 1969) (per curiam).

    B.    Defendant is not liable for a taking where the rail corridor is owned by MCRR in fee

In order to establish a right to just compensation, plaintiffs must demonstrate a valid ownership interest in the property at issue. Ellamae Phillips, 564 F.3d at 1373. Plaintiffs cannot make such a showing with regard to property owned by MCRR in fee.

    1.    Claim 9B (Windell and Kristine Kenney), the Tilbe Deed

Defendant claims that, based on the express language of the relevant deed, it owns in fee the portion of the rail corridor at issue in claim 9B. See ECF No. 36 at 24. In the Tilbe Deed, the property owner states: "I hereby grant, sell and quitclaim to the said St. Louis, Kansas City & Colorado Railroad Company and to its successors and assigns forever" the described property. See ECF No. 36-3 at 3. The conveyance was made "for and in consideration of the sum of Ten ($10) Dollars." See id. The deed concludes with the following language:

> To Have and to Hold the same unto the said St. Louis, Kansas City & Colorado Railroad Company and unto its successors and assigns forever, with all appurtenances thereunto belonging.
>
> This grant, and conveyance is conditioned, however that the said Railroad Company shall complete said road across said tract of land within two years from the date of the execution of this deed, otherwise it is to be null and void as a deed or grant and the title to the above described tract of ___ is to revert to and revest in me, the said H. J. Tilbe, Witness my hand and seal on this the 28th day of May 1901.

See id. at 3-4.  Plaintiffs contend that the language of the Tilbe Deed effects a voluntary grant and, as such, conveys only an easement limited in scope "to railroad purposes as a matter of law." See ECF No. 37 at 21.  For the reasons previously discussed, the court does not credit this assumption.

As an alternative means of demonstrating that the Tilbe Deed involves a voluntary grant, plaintiffs also assert that the ten dollars provided as consideration for the deed is nominal.  See ECF No. 37 at 21.  This conclusion does not comport with Missouri law.  Under relevant precedent, any consideration of more than one dollar is deemed "valuable consideration."  See ECF No. 36 at 25-26 (citing Brown, 152 S.W.2d at 653; Allaben v. Shelbourne, 212 S.W.2d 719, 723 (Mo. 1948) ("[A]ny other stated sum of money in excess of one cent, one dime, or one dollar . . . is a valuable consideration within the meaning of the law of conveyancing.").

In response to plaintiffs' arguments, defendant points to several clauses within the source deed language that indicate a conveyance of a fee simple interest.  The property was "grant[ed]" and "quitclaimed" to the railroad company "and unto its successors and assigns forever, with all appurtenances thereunto belonging."  See ECF No. 36-3 at 3. Each of these words and phrases indicate the owner's intention to part with the property permanently.  See Nixon v. Franklin, 289 S.W.2d 82, 88 (Mo. 1956) (holding that the words "grant, bargain, and sell" are evidence of a conveyance in fee); Bayless v. Gonz, 684 S.W.2d 512, 513 (Mo. App. (1984) (holding that "to have and hold" and all "appurtenances" language in a habendum claims indicates a fee conveyance).

This conclusion is buttressed by the one condition that is specifically included in the deed:

> This grant, and conveyance is conditioned, however that the said Railroad Company shall complete said road across said tract of land within two years from the date of the execution of this deed, otherwise it is to be null and void as a deed or grant and the title to the above described tract of ___ is to revert to and revest in me, the said H. J. Tilbe.

See ECF No. 36-3 at 4. The express language of the deed makes clear that the owner intended to convey title to the subject property pursuant to this deed, and that the only condition that could operate to cancel the conveyance, should it go unmet, is the railroad company's promise to complete a nearby road within two years. Plaintiffs have presented no evidence that the railroad company failed to meet this condition.

The court notes that the Tilbe deed contains additional conveyances that are not at issue here—one to allow for cuttings and embankments, and one providing a right of entry for the purpose of railroad construction. See id. at 3. These conveyances are not at issue because they are not part of the rail corridor, and thus, any potentially limiting language contained in these ancillary conveyances will not operate to define the character of what the court has previously held to be a conveyance in fee. See Clevenger v. Chicago, Milwaukee & St. Paul Ry. Co., 210 S.W. 867, 868 (Mo. 1919) (holding that the conveyance for the center 100 feet was in fee and the side tracks were easements); Hinshaw, 450 S.W. 3d at 827-29 (holding that one of the conveyances was in fee and the other adjacent conveyances were easements).

As such, the court finds that MCRR owns in fee the rail corridor that is the subject of claim 9B.

> 2. Claims 11 (John and Beverly Smith) and 60 (Julie Branson), the Hafner Deed

The property at issue in claims 11 and 60, the subject of the Hafner deed, includes a 100-foot wide right of way flanked by 100-foot strips of land on either side—for the purpose of cuttings and embankments. See ECF No. 36-3 at 8-9. As with the Tilbe deed, defendant argues that the language of the deed conveys a fee interest in the center 100-foot strip, and that the two separate conveyances that are not at issue here. See ECF No. 36 at 27-29. Plaintiffs disagree, arguing that the deed conveys an easement of a 300-foot wide strip of land. See ECF No. 37 at 22.

In relevant part, the deed states that for consideration in the amount of fifty dollars, the Hafners "grant, bargain and sell, convey and confirm" the center 100-foot strip of property to the railroad company. See ECF 36-3 at 8. After reciting a description of that property, the deed also includes the following passage:

> And for the purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid, such additional strips or parcels of land as may be necessary for that purpose One hundred feet on each side of and adjacent to above described way across the aforesaid SW[] of NE[] and the said Henry Dupiech [sic] of St. Louis joins in this deed for the express purpose of releasing above

8

>described strips for right of way & cuttings & embankments from his deed of trust on above described land dated \_\_\_\_\_ and also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad.

Id. at 8-9. And in the concluding paragraph, the deed notes that railroad company shall hold the land "together with all the right, immunities, privileges and appurtenances to the same . . . forever." See id. at 9.

Defendant takes the position that the rail corridor, which consists of the center 100-foot strip, is a separate and distinct conveyance from the strips on either side. See ECF No. 36 at 28. According to defendant, MCRR owns the rail corridor in fee, and that "both the cuttings-and-embankments and temporary-access conveyances are irrelevant because they do not grant any land currently at issue." See ECF No. 36 at 28. Defendant reasons that, when appropriately separated from the two temporary conveyances which are already part of plaintiffs' property, the rail corridor conveyance contains no limiting language, and thus, effected a conveyance in fee. See ECF No. 36 at 27.

Plaintiffs insist that the deed addresses an indivisible 300-foot strip of property. See ECF No. 37 at 22. When viewed as a solitary conveyance, plaintiffs argue, inclusion of the phrases "way across the aforesaid" and "above described strips for right of way" sufficiently limit the grant such that the court should conclude that the railroad received only an easement. See ECF No. 37 at 22. Defendant, in its reply, characterizes the phrase "way across the aforesaid" as "merely descriptive," not limiting. ECF No. 38 at 8 (citing Hubbert v. United States, 58 Fed. Cl. 613, 615-16 (2003) and Schuermann Enters., Inc. v. St. Louis Cty., 436 S.W.2d 666, 669 (Mo. 1969)). In addition, defendant asserts that the phrase "above described strips for right of way" appears in "a release from a deed of trust, which has no bearing on deed interpretation." Id. (citing Eurengy v. Equitable Realty Corp., 107 S.W.2d 68, 71 (Mo. 1937) and Libby v. Uptegrove, 988 S.W.2d 131, 132 (Mo. Ct. App. 1999)).

The court agrees with defendant that the Hafner deed makes more than one conveyance, and that each must be treated separately under Missouri law. See Clevenger, 210 S.W. at 867-68 (Mo. 1919); Hinshaw, 450 S.W.3d at 827-29. As such, any limitations that may have been intended to circumscribe the cuttings-and-embankments conveyance or the temporary-access conveyance cannot be read to limit the conveyance of the center 100-foot strip used as part of the rail corridor.

Because the Hafner deed conveyed the center 100-foot wide strip of land to the railroad for valuable consideration without limiting language, the railroad possesses a fee interest in that property.

3. Claim 17 (Joyce Medlock), the Keeney Deed[2]

Like the Hafner and Tilbe deeds, the Keeney deed contains three separate conveyances including a 100-foot wide parcel for the rail corridor, and 100-foot wide parcels on either side of the corridor. See ECF No. 36-3 at 20-21. Defendant concedes that the parcels on either side of the rail corridor are easements, see ECF No. 36 at 30, but argues that the railroad owns a fee interest in the center parcel based on the deed language and valuable consideration of thirty-five dollars, see id. at 30.

The deed states that the grantor "grant[s], bargain[s], and sell[s], convey[s] and confirm[s]" the center strip of property. ECF No. 36-3 at 20. The deed also contains the habendum language: "To [h]ave and to hold the same, together with all the rights, immunities, privileges and appurtenances to the same." Id. at 21. As the court has previously observed, this is the language of fee conveyance under Missouri law. See Nixon v. Franklin, 289 S.W.2d 82, 88 (Mo. 1956) (holding that the words "grant, bargain, and sell" are evidence of a conveyance in fee); Bayless v. Gonz, 684 S.W.2d at 513 (holding that "to have and hold" and all "appurtenances" language in a habendum claims indicates a fee conveyance).

Plaintiffs argue that the deed's description of the rail corridor as a "right of way" sufficiently limits what might otherwise be a fee conveyance, such that the court should find the rail corridor conveyance was only an easement. See ECF No. 37 at 23 (citing ECF No. 36-3 at 21). Such a conclusion, however, is contrary to Missouri law. See Hubbert, 58 Fed. Cl. 613, 615-16 (2003) (holding that the phrase "right of way" is merely descriptive under Missouri law).

For these reasons, the court finds that MCRR owns the center 100-foot conveyance in fee.

C. Plaintiffs have failed to prove that they possess a valid property interest in claims 1A (Mark and Helen Heintz), 29 (Manuel D. Duncan), and 41 (Kurtz Revocable Living Trust)

As noted above, the first step in determining whether a taking has occurred under the Trails Act is to identify whether plaintiff has an actual ownership interest in the property at issue. Ellamae Phillips, 564 F.3d at 1373. Plaintiffs bear the burden of

---

[2] Plaintiffs have presented two Keeney Deeds—one relating to the north portion of the property, and the second relating to the south portion of the property. This section analyzes only the deed relating to the south portion of property because defendant has stated that it lays no claim to any part of the north section, as it contains no part of the rail corridor. See ECF No. 36 at 31.

proving their property interest as a basis for their takings claim. Caldwell, 391 F.3d at 1228. Here, plaintiffs have failed to establish an ownership interest for several of the claims before the court.

        1.        Claims 1A (Mark and Helen Heintz) and 29 (Manuel D. Duncan)

The subject parcels of the land in claims 1A and 29 are separated from the railroad's right-of-way by Highway 28 in Maries County and Highway 52 in Morgan County, respectively. See ECF No. 37 at 25. Both highways were constructed long after the Missouri Department of Transportation acquired the railroad's right-of-way. See id. Plaintiffs assert that the two highways are themselves easements and thus, the adjacent landowners have an ownership interest that extends to the centerline of the railroad's right of way. See id.

This argument implicates what is known as the centerline presumption under Missouri law. As the court in Brown v. Weare explained, in cases where a railroad receives only an easement:

> in the absence of evidence to the contrary . . . the title to the fee is presumed to be in the abutting landowners and the title of each extends to the center of the way. This presumption may be rebutted by evidence to show that the entire way has been taken from the land of only one of the abutting owners.

Brown, 152 S.W.2d at 655 (citations omitted). See also St. Louis Cty. v. St. Appalonia Corp., 471 S.W.2d 238, 243 (Mo. 1971).

With regard to claims 1A and 29, defendant argues that plaintiffs lack standing because the properties at issue "are not, and never were, adjacent to the rail corridor." ECF No. 36 at 34. Thus, defendant insists, plaintiffs' cannot claim a centerline presumption across the highways. See id. at 35; ECF No. 38 at 10-11. In support of its position, defendant cites Moore v. United States, which involves an application of Missouri law to Trails Act cases where a public road separates properties from the railroad corridor. 58 Fed. Cl. 134, 138-39 (2003). The court held that plaintiffs owned "fee title up to the county road [but] not across it to the railroad corridor." Moore, 58 Fed. Cl. at 138-39. Here, as in Moore, the property records show that plaintiffs' land was never adjacent to the rail corridor; rather, it was part of a larger tract of subdivided land that was bounded by the southern line of the highway. See ECF No. 36 at 34 (citing ECF No. 36-4 at 1-25).

As defendant observes, contrary to plaintiffs' assertion, there is no presumption that the state highway is an easement under Missouri law. See id. at 35 (citing Ogg v. Mediacom, L.L.C., 142 S.W.3d 801, 811 (Mo. Ct. App. 2004); St. Louis Cty., 471 S.W.2d at 242)). Defendant adds that even if the highway were an easement, plaintiffs'

ownership interest would extend only to the center of the highway, but not to the rail corridor because plaintiffs' historical property boundary is the highway. Id. (citing Brown, 152 S.W.2d at 654-55; St. Louis Cty., 471 S.W. 2d at 243).

Plaintiffs have not pointed to any evidence in the record demonstrating that they own an interest in the land on which Highways 28 and 52 are situated. Nor have plaintiffs provided any legal support for their claim that the two highways are themselves easements that create a presumption of property ownership to the centerline of the railroad's right of way. Therefore, plaintiffs have not established that a genuine issue of material fact exists as to their ownership interest in the property at issue in claim 1A or claim 29.

    2.    Claim 41 (Kurtz Revocable Living Trust)

Defendant argues that it is entitled to summary judgment because the land in claim 41 lies entirely in section four, and the subject rail corridor lies entirely in section nine. See ECF No. 36 at 33. In support of this assertion, defendant points to a map from Morgan county records of the property produced to it by plaintiffs. See ECF No. 36-3 at 37. The map clearly shows that the property, highlighted in red, is contained in section four, while the rail line is below, contained in section nine. See id. Defendant notes that plaintiffs admitted as much when they acknowledged that "[t]he current parcel boundary actually abuts the section line and is contained within section 4," but that "the railroad's right-of-way . . . is contained within section 9." ECF No. 35 at 36. Thus, defendant asserts, plaintiffs do not have a viable claim.

In response, plaintiffs have altered their original argument to urge instead that there is a factual dispute as to the location of the rail corridor, and proposes that a survey of the area should be taken to resolve it. See ECF No. 37 at 26. Defendant denies that a factual dispute exists and argues that plaintiffs' request for additional discovery should be denied because it is in effect a request under RCFC 56(d), without the required affidavit or declaration. See ECF No. 38 at 9-10.

Plaintiffs bear the burden of showing that the location of the land in claim 41 raises an issue of material fact for trial, Celotex Corp., 477 U.S. at 323, but they have failed to do so. The record before the court is clear. The land involved in plaintiffs' claim 41 is not adjacent to the rail corridor at issue.

    D.    Claims 21A (Connie Humphrey), 21B (Connie Humphrey), 22 (Tony Humphrey), 23 (Etterville Christian Church), and 24 (Barbara Galloway and Richard Popp) involve property outside the scope of this case

Defendant moves for summary judgment on claims 21A, 21B, 22, 23, and 24 on the basis that these claims involve properties that are not included in the land MCRR

sought to abandon and to which the pertinent NITU applies.  See ECF No. 36 at 35 (citing ECF No. 36-2 at 6-13 (NITU)).  Defendant presents evidence, in the form of the quitclaim deed, that MCRR's predecessor-in-interest quitclaimed the land involved in these claims in 1999.  See id. at 36 (citing ECF No. 36-5 at 96).  Defendant argues that because MCRR did not own an interest in the property at issue in claims 21A, 21B, 22, 23, and 24 at the time of issuance of the NITU on which plaintiffs rely, plaintiffs do not have a basis for their claims.  Id.

Plaintiffs argue that the original source conveyance to the railroad was an easement because the consideration provided was nominal.  See ECF No. 37 at 23.  According to plaintiffs, because the railroad received an easement only, it could not later quitclaim more than an easement interest 1999.  Id. at 24.  Plaintiffs go on to argue that because the interest was quitclaimed to an entity related to MCRR that later dissolved, and the land has since been railbanked, defendant cannot successfully question whether claims 21A, 21B, 22, 23, and 24 involve land adjacent to the rail corridor at issue.  Id.

MCRR initiated the STB abandonment proceedings on which the relevant NITU is based.  See ECF No. 36-2 at 6-13 (NITU)).  To succeed on their takings claims here, plaintiffs must prove that conversion of the railroad's right-of-way to trail use through the NITU would effectively eliminate any state law reversionary property interest they otherwise would have had in that right-of-way.  Caldwell, 391 F.3d at 1228 (citing Preseault II, 100 F.3d at 1543).  See also ECF No. 24 (plaintiffs' fourth amended complaint alleging that plaintiffs' claims arise out of easements owned by MCRR).  Plaintiffs have failed to demonstrate that any interest in the property at issue in claims 21A, 21B, 22, 23, and 24 was held by MCRR at the time the NITU was issued.  Because plaintiffs' complaint alleges that operation of the Trails Act effected a taking, see ECF No. 24 at 20, any property not covered by the NITU, which was issued pursuant to the Trails Act, cannot be part of plaintiffs' case as alleged.

As such, the court finds that claims 21A, 21B, 22, 23, and 24 relate to property outside the scope of this litigation.

> E.   Defendant is not liable for a taking where the conveyed easements are broad enough to encompass trail use and railbanking

The United States has no takings liability where trail use falls within the scope of the easements at issue.  See Romanoff Equities, Inc., 815 F.3d at 812-13; Ellamae Phillips, 564 F.3d at 1373.  Plaintiffs bear the burden of establishing that trail use falls outside the scope of those easements.  Preseault II, 100 F.3d at 1533.

Defendant asserts that several of the easements conveyed by voluntary grant to the railroad are broad enough to encompass both trail use and railbanking.  See ECF No. 36 at 38-41.  In its cross-motion, defendant includes a table in which it lists the deeds that

13

convey voluntary grants and identifies the 36 corresponding claims. See id. at 41-43. The table includes the following claims: 1A (Mark and Helen Heintz), 2 (Gordon and Judith Gehlert), 3 (Tom Kixmueller), 4 (Sherry Crider), 5 (Sonya Durbin-Wiles and Gary Wiles), 6 (Von Buehrlen), 7 (Gary Seba), 8 (Casey & Rainey Schalk), 9A (Wendell and Christine Keeney), 9C (Wendall and Christine Keeney), 10 (Linda Taggart), 14 (Duane Siegler), 15 (Jane Trimble), 16 (Greg Thomas), 25 (Rodger Bax), 26 (Iris Brown), 34A (Mariann Murphy), 39C (Michael & Mary Reed), 39D (Michael & Mary Reed), 40 (CJ Welding & Fabrication), 45 (Rodney and Brenda Thompson), 47A (Frederick and Virginia Bethmann and Theodore Bethman), 47B (Frederick and Virginia Bethmann and Theodore Bethman), 48 (Mark Lammert), 49B (Kenneth Butler and Sheila Hamm), 50 (Macy and Debra Jett, Terry Lyndon Jett and Thomas Parker Jett), 51 (Kathryn Giesler c/o Merry Drewel), 52 (Nicholas Hilkemeyer, Patrick Hilkemeyer and Bernard Hilkemeyer), 53 (Robert E. and Mary Rodeman Trust), 54 (James and Dorothy Summers), 55 (Sharon Vinci), 56 (Roger and Rhonda Purl), 57 (Callaghan Wharehouse LLC), 58 (Kenneth P. and Dora Gerber), and 59 (Roger Lenhoff).[3]  See id.

Defendant concedes that each identified deed likely conveys an easement as opposed to a fee interest because each deed involves nominal consideration. See id. at 39. All of the deeds include what defendant calls a "primary conveyance" that "conveys the center 100-foot portion of the rail corridor." Id. at 40. A subset of the deeds "also include secondary conveyances referred to as 'cutting-and-embankment' and 'temporary-access' conveyances." Id. Defendant asks the court to draw two conclusions: (1) "that the primary conveyances in the one-dollar deeds convey unrestricted easements that encompass trail use of railbanking," and (2) "that the secondary conveyances do not limit the scope of the primary conveyances." Id. at 41.

Taking the second issue first, the court notes that, as it has already found, each conveyance in a deed must be individually evaluated—limits on one conveyance should not, as a matter of course, be interpreted as a limit on all conveyances. See Clevenger, 210 S.W. at 868 (holding that the conveyance for the center 100 feet was in fee, and that the conveyances for the side tracks were easements); Hinshaw, 450 S.W. 3d at 827-29 (holding that one of the conveyance was in fee and the other adjacent conveyances were easements). Thus, to the extent that any of the deeds included in defendant's table involve secondary conveyances, limits thereon will not be read to apply to the primary conveyance absent evidence of the grantors' intent to do so in a specific document.

The court is left, then, with the task of evaluating the scope of the primary conveyances included in the deeds listed in defendant's table to determine whether the conveyances are broad enough to encompass trail use or railbanking. In its motion,

---

[3]   Plaintiffs' names are recited as set forth in the caption of the fourth amended complaint. See ECF 24.

14

defendant states that "no court interpreting Missouri law has ever found that a conveyance to a railroad without any limiting language prohibits trail use or railbanking." ECF No. 36 at 40. Here, "[t]he primary conveyances have unrestricted granting clauses, property descriptions and habendum clauses that allow for any used desired by the railroad." Id. at 43-44. As such, defendant insists, the broad and unlimited language of these conveyances allow the railroad to railbank its interest or convert its easement into a trail without implicating plaintiffs' reversionary interests. Id. at 44-46.

In response, plaintiffs reiterate their position that voluntary grants to the railroad are easements, and are statutorily limited to use for railroad purposes under Missouri law. Trail use and railbanking, the argument goes, necessarily exceed the scope of the railroad's easement interest. See ECF No. 37 at 13-17. As the court discussed above, the court does not read Missouri law to create such a presumption.

Plaintiffs have not identified any disputed material fact, or any fact in the record that contravenes defendant's assertion that the primary conveyances in these source deeds are broad enough to enough to encompass trail use and railbanking. Celotex Corp., 477 U.S. at 322.

Because the primary conveyances do not contain language limiting their scope, the court finds that the easements involved in the following claims are broad enough to encompass trail use and railbanking: 1A, 2, 3, 4, 5, 6, 7, 8, 9A, 9C, 10, 14, 15, 16, 25, 26, 34A, 39C, 39D, 40, 45, 47A, 47B, 48, 49B, 50, 51, 52, 53, 54, 55, 56, 57, 58, and 59.

IV. Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment, ECF No. 34, is **DENIED**, and defendant's cross-motion for summary judgment, ECF No. 36, is **GRANTED**.

The parties are directed to confer regarding the effect of the legal conclusions in this opinion and to file a joint stipulation as to the claims that remain viable in this case. As part of the stipulations, the parties shall identify for the court the number and nature of the conveyances involved in each claim. The parties shall file the joint stipulations on or before **July 28, 2017**.

The court reserves its determination as to any liability on the remaining claims until it has had the opportunity to consider the import of the Federal Circuit's decision in Caquelin v. United States, No. 16-1663, which was issued on June 21, 2017. The court would like to hear from the parties on this matter. To that end, also on or before **July 28, 2017**, the parties shall file a joint proposed scheduling order to govern future proceedings in this case. That schedule shall specifically account for submissions from the parties addressing the effect of the Caquelin decision on the issues in this case.

15

IT IS SO ORDERED.

                                       s/ Patricia Campbell-Smith
                                      PATRICIA CAMPBELL-SMITH
                                      Judge